-BROWN, P. J.
—The plaintiff alleged in his complaint that in May, 1893, his son, who resided with him on his farm at Lake Mahopac, in Putnam county, was ill with typhoid fever, and that during that month “the defendant, by its officers or representatives, *546 entered upon said premises, in company with a deputy sheriff of Putnam county, and ordered the plaintiff to remain in the house, and placed said depnty sheriff in charge thereof, with orders to arrest the plaintiff or any of his family who attempted to leave the samethat the plaintiff was illegally restrained of his liberty for the period of twenty-one days, for which detention, and for the injuries sustained by reason thereof, a recovery is sought against the defendant.
It would serve no useful p.urpose to enter into a discussion of the distinction between the public and private powers of municipal corporations as affecting corporate liability, or attempt to point out the line of demarkation between these powers. The most recent expressions of judicial opinion upon that interesting question will be found in Springfield Fire & Marine Ins. Co. v. Village of Keeseville, 148 N. Y. 46 ; Hughes v. Monroe Co., 147 id. 49 ; 69 St. Rep. 306; and Mayor, etc., of New York v. Workman, 14 C. C. A. 530; 67 Fed. 347. The rule of law which controls this case is that, to establish municipal liability, the act complained of must be one within the scope of the power of the corporation conferred upon it by statute. If the act complained of was committed outside of "the authority and power of the corporation thus conferred, the corporation is not liable, although the officers of the corporation may have expressly directed its performance, Smith v. City of Rochester, 76 N. Y. 506; Dill. Mun. Corp. (3d Ed.) §§ 968-996; Tied. Mun. Corp. 331a, 332, 333.
The plaintiff's case, if sustainable in law, must find its support in chapter 189, Laws 1893. For the purpose of construing that act, we assume, although the fact does not appear in the case, that the plaintiff’s farm lies within the territory usually designated as the “ Croton Watershed.” The question persented is, therefore, does the statute referred to confer upon the commissioner of public works of the city or New York, as incidental to .the preservation from pollution and defilement of the sources of the water supply of the city, the power to do such an act as the plaintiff complains of ? The section of the statute to which we are referred as a source of this power is as follows
“Sec. 27. The commissioner of public works of the city of New York is hereby authorized to take such measures as may be necessary to preserve from pollution and defilement all the sources of the water supply, whether the same be rivers or .other water courses, lakes, ponds or reservoirs situate in the counties of Westchester, Dutchess and Putnam, and to that end to enter in and upon, at any time within three years after the passage of this act, anjr or all lands near, on, adjacent or contiguous to any of the said sources of water supply, and to abate and remove the cause of an v such pollution or defilement.”
This section clearly confers no power to arrest or quarantine persons. It empowers the commissioner to enter upon lands, and abate and remove nuisances therefrom, but none to interfere with or restrain individuals living upon the property.
The act of which the plaintiff complains, and which forms the basis of the cause of action set forth in his complaint, was, there *547 fore, one wholly outsids of any power conferred by law upon the commissioner of public works, and for it the city was not liable. The judgment must be affirmed, with costs.
All concur.